## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LAG OASIS, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-6584** |
| **INDEPENDENT SPECIALTY INSURANCE CO. et al.** | **SECTION: "G"(2)** |

## ORDER AND REASONS

Before the Court is Defendants Independent Specialty Insurance Company ("ISIC"), and Certain Underwriters at Lloyd's and Other Insurers Subscribing to Binding Authority B604510568622021's ("Underwriters")[1] (collectively, "Defendants") "Motion to Compel Arbitration and to Stay, or Alternatively, Dismiss these Proceedings" ("Motion to Compel Arbitration").[2] In the motion, Defendants seek an order compelling Plaintiff LAG Oasis, LLC ("Plaintiff") to arbitrate the claims against Defendants and staying the litigation pending arbitration pursuant to 9 U.S.C. §§ 3, 208.[3] Plaintiff opposes the motion.[4] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion in part and denies it in part. The motion is granted to the extent Defendants move the Court

---

[1] Underwriters was incorrectly named in the caption of the Petition for Damages as Certain Underwriters at Lloyd's and Other Insurers Subscribing to Binding Authority B604510568622021 (Certain Underwriters at Lloyd's – Syndicate 1458 and RenaissanceRE Specialty U.S. Ltd.).

[2] Rec. Doc. 9.

[3] *Id*. at 1.

[4] Rec. Doc. 17.

1

to compel arbitration and stay this litigation. The motion is denied to the extent Defendants move this Court to dismiss Plaintiff's claims against them.

## I. Background

This litigation arises out of alleged damage to Plaintiff's property during Hurricane Ida.[5] Plaintiff filed a petition for damages against Defendants in the Twenty-Fourth Judicial District Court for the Parish of Jefferson on August 25, 2023.[6] According to the Petition, Plaintiff purchased an insurance policy from Defendants on August 23, 2021, insuring the properties located at 6001–6025 Jefferson Highway, Harrahan, LA 70123 (the "Policy").[7] Plaintiff avers that, on August 29, 2021, the property covered by the Policy was severely damaged by hurricane force winds sustained during Hurricane Ida.[8]

On October 27, 2023, Defendants removed the action to this Court, asserting subject matter jurisdiction based on a federal question under 28 U.S.C. §§ 1441 and 1446.[9] In the Notice of Removal, Defendants asserted that removal was proper because there is an arbitration provision in the Policy that falls under the Convention Act, 9 U.S.C. § 201, *et seq.* (the "Convention Act").[10] "Congress promulgated the Convention Act in 1970 to establish procedures for our courts to implement" the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention").[11] The Convention is an international treaty, ratified by Congress in 1970, which

---

[5] Rec. Doc. 1-1 at 1.

[6] *Id.*

[7] *Id.* at 3.

[8] *Id.* at 4.

[9] Rec. Doc. 1 at 3.

[10] *Id.*

[11] *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1208 (5th Cir. 1991).

seeks to "encourage the recognition and enforcement of commercial contracts and to unify the standard by which the agreements to arbitrate are observed, and arbitral awards are enforced in signatory countries."[12] Therefore, Defendants averred in the Notice of Removal that, because Underwriters is an insurance market in the United Kingdom, this Court has original jurisdiction under the Convention Act.[13]

On January 17, 2024, Defendants filed the instant Motion to Compel Arbitration.[14] On March 12, 2024, Plaintiff opposed the Motion to Compel Arbitration.[15] On March 20, 2024, Defendants filed a reply brief.[16] On March 21, 2024, Plaintiff filed a sur-reply brief.[17]

## II. Parties' Arguments

### A.   *Defendants' Arguments in Support of the Motion to Compel Arbitration*

In support of the Motion to Compel Arbitration, Defendants argue that all four requirements necessary for a court to compel an arbitration under a provision governed by the Convention Act are satisfied.[18] Defendants argue that the first criteria—whether there is a written agreement to arbitrate the matter—is met because the Policy's arbitration clause is a written agreement to arbitrate this dispute.[19] Defendants assert that the second criteria—whether the

---

[12] *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).

[13] Rec. Doc. 1 at 8–9. 9 U.S.C. § 205 states that "where a subject matter of an action or proceeding pending in State court relates to an arbitration agreement or award falling under the Convention, … the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States and division embracing the place where the action or proceeding is pending."

[14] Rec. Doc. 9.

[15] Rec. Doc. 17.

[16] Rec. Doc. 23.

[17] Rec. Doc. 27.

[18] *See* Rec. Doc. 9-1 at 7–8.

[19] *Id*. at 8.

agreement provides for arbitration in a Convention signatory nation—is satisfied because the Policy provides for arbitration in the United States.[20] Defendants contend that the third criteria—whether the arbitration agreement arises from a commercial legal relationship—is satisfied because Plaintiff and Defendants had a commercial legal relationship.[21] Finally, Defendants aver that the fourth criteria—whether any party to the agreement is not an American citizen—is satisfied because Underwriters is comprised partially of syndicates that are citizens of the United Kingdom.[22] Thus, Defendants conclude that the Convention requires that the Court compel arbitration.[23]

If Plaintiff were to argue that one of the narrow exceptions to arbitration bars the arbitration provision's application, Defendants submit that such questions must be submitted to the arbitration panel because the provision contains a broad clause requiring that the parties arbitrate "all matters in dispute."[24] Finally, Defendants argue that a stay of all issues referable to arbitration is mandatory.[25] Alternatively, Defendants assert that the Court may dismiss the case because all of the claims raised are arbitrable.[26]

---

[20] *Id*. at 8.

[21] *Id*.

[22] *Id*.

[23] *Id*. at 9. Defendants also argue that the arbitration agreement is equally enforceable under the Federal Arbitration Act. *Id.* at 9–11.

[24] *Id*. at 12–13.

[25] *Id*. at 13.

[26] *Id*.

**B.      *Plaintiff's Arguments in Opposition to the Motion to Compel Arbitration***

In opposition to Defendants' Motion to Compel Arbitration, Plaintiff points out that Defendants have paid the policy limits in excess of $3 million to Plaintiff, and only the bad faith claims remain pending in this case.[27] Plaintiff argues that the Motion to Compel should be denied for two reasons: (1) there was no written agreement to arbitrate signed by both parties as required by Section II of the Convention; and (2) if the Court determines that the arbitration clause is valid, it should nevertheless refuse to enforce it under the prospective-waiver doctrine given the specific procedural posture of this case.[28]

First, Plaintiff asserts that it did not sign the contract containing the arbitration clause.[29] Therefore, Plaintiff argues that there is no valid agreement in writing in this case.[30] Plaintiff acknowledges that the Fifth Circuit held the opposite in *Sphere Drake Ins. PLC v. Marine Towing, Inc.*[31] Plaintiff submits that every federal court of appeal to consider this issue since *Sphere Drake* has held that Section 2 requires that both "an arbitral clause in a contract" as well as "an arbitration agreement" be signed by the parties in order to be valid.[32] Plaintiff also points out that the Fifth Circuit recently called its decision in *Sphere Drake* into question.[33]

---

[27] Rec. Doc. 17 at 6.

[28] *Id.* at 6–7.

[29] *Id.* at 15.

[30] *Id.*

[31] *Id.* (citing 16 F.3d 666 (5th Cir. 1994)).

[32] *Id.* at 16–19 (citing *Kahn Lucas Lancaster, Inc. v. Lark Intern. Ltd.*, 186 F.3d 210 (2d Cir. 1999*); Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 449 (3d Cir. 2003); *Czarina, LLC v. W.F. Poe Syndicate*, 358 F.3d 1286, 1290–91 (11th Cir. 2004); *Yang v. Majestic Blue Fisheries, LLC*, 876 F.3d 996, 999–1001 (9th Cir. 2017)).

[33] *Id.* at 16–19 (citing *Neptune Shipmanagement Services PTE, Limited v. Dahiya*, 15 F.4th 630 (5th Cir. 2021)).

Second, Plaintiff argues that this Court should refuse to enforce the arbitration provision as against public policy under the "prospective-waiver" doctrine.[34] Plaintiff points out that the arbitration clause states that "[t]he Arbitration Tribunal may not award exemplary, punitive, multiple, consequential, or other damages of a similar nature."[35] Plaintiff asserts that it has the right to pursue a claim for penalties, attorneys fees, extra contractual and consequential damages for the unreasonable, arbitrary and capricious actions of Defendants, and the arbitration clause strips Plaintiff of that right by indicating the panel may not decide those damages.[36]

### C.   *Defendants' Arguments in Further Support of the Motion*

In reply, Defendants point out that Plaintiff's argument regarding the contract being signed contradicts the Fifth Circuit's holding in *Sphere Drake*.[37] Defendants contend that arbitration agreements exchanged in letters are enforceable under the Convention.[38] Defendants argue that it is not seriously debatable that the written insurance contract is an "agreement in writing" under domestic law.[39] Defendants assert there is nothing in the Convention's text, drafting history, or post-ratification interpretation supporting the argument that the Convention seeks to impose a higher standard for what constitutes a written agreement than otherwise applicable law.[40]

---

[34] *Id.* at 21.

[35] *Id.*

[36] *Id.* at 25.

[37] Rec. Doc. 23 at 5 (citing 15 F.3d at 669).

[38] *Id.* at 5–6.

[39] *Id.* at 7.

[40] *Id.* at 8.

Defendants also argue that the prospective waiver doctrine does not bar compelling arbitration.[41] Defendants assert that the prospective waiver doctrine can only be raised during the enforcement stage under the Convention.[42] Additionally, Defendants contend that the doctrine can only be used to avoid an award if there was no adequate remedy for the violation of a federal statute. Defendants point out that Plaintiff has not identified any federal statute that is impacted by the agreement.[43] Defendants also assert that the agreement does not prevent Plaintiff from recovering consequential damages, which are the measure of damages for bad faith actions under New York law.[44]

**D.      *Plaintiff's Arguments in Further Opposition to the Motion***

In the sur-reply brief, Plaintiff disputes Defendants argument that the arbitration agreement was exchanged by letter.[45] Plaintiff points out that the arbitration clause was not referenced in the policy quote, which was exchanged between the parties.[46] Plaintiff contends that nothing in the evidence submitted by Defendants shows that Plaintiff was ever informed that the proposed policy contained an arbitration clause until after it was issued.[47]

### III. Legal Standard

Agreements arising under the Convention are subject to the provisions of the Federal

---

[41] *Id.*

[42] *Id.* at 9–13.

[43] *Id.* at 14–16.

[44] *Id.* at 16.

[45] Rec. Doc. 27 at 2.

[46] *Id.* at 4.

[47] *Id.* at 5.

Arbitration Act ("FAA") unless the FAA is in "conflict" with the Convention.[48] The FAA was enacted in order to "allow[] a party to . . . an arbitration agreement to petition any United States district court for an order directing that such arbitration proceed in the manner provided for in such agreement."[49] In *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, the United States Court of Appeals for the Fifth Circuit explained that the FAA was "in large part motivated by the goal of eliminating the courts' historic hostility to arbitration agreements."[50] The Fifth Circuit further explained that "Section 2 of the FAA puts arbitration agreements on the same footing as other contracts."[51] This means that, "as a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts."[52]

Under the FAA, there is a "strong federal policy in favor of enforcing arbitration agreements."[53] Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . . the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . .[54]

"[I]f the issues in a case are within the reach of that [arbitration] agreement, the district court has

---

[48] *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S.Ct. 1637, 1644 (2020).

[49] *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) (internal quotation marks omitted).

[50] 379 F.3d 159, 166 (5th Cir. 2004).

[51] *Id.*

[52] *Id.*

[53] *Texaco Expl. & Prod. Co. v. AmClyde Engineered Prod. Co.*, 243 F.3d 906, 909 (5th Cir. 2001) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985)).

[54] 9 U.S.C. § 3.

no discretion under section 3 to deny the stay."[55]

## IV. Analysis

### A.    *Whether there is a Valid Agreement to Arbitrate Plaintiff's Claims*

The Convention Act incorporates the FAA except for the few provisions where the two laws conflict.[56] The Supreme Court has noted the "emphatic federal policy in favor of arbitral dispute resolution," which "applies with special force in the field of international commerce."[57] Thus, the Fifth Circuit has explained that, "[i]n determining whether the Convention requires compelling arbitration in a given case, courts conduct only a very limited inquiry."[58] Therefore, absent a finding that the subject "agreement is null and void, inoperative, or incapable of being performed," a court must grant a motion to compel arbitration if the following requirements are met: "(1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen.'"[59]

Plaintiff does not contest that the second, third, and fourth requirements are satisfied. The arbitration clause provides for arbitration in the United States, a signatory nation. Additionally, the agreement arises out of a commercial legal relationship through the contract of insurance between

---

[55] *Texaco Expl. & Prod. Co.*, 243 F.3d at 909 (citing *Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993)).

[56] *McDermott Int'l., Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1208 (5th Cir. 1991) ("The Convention Act incorporates the FAA except where the FAA conflicts with the Convention Act's few specific provisions.") (citing 9 U.S.C. § 208).

[57] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

[58] *Freudensprung v. Offshore Tech. Servs., Inc.*, 379, F.3d 327, 339 (5th Cir. 2004) (citing *Francisco v. STOLT ACHIEVEMENT MT,* 293 F.3d 270, 273 (5th Cir. 2002)).

[59] *Id.* (quoting *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1146 (5th Cir. 1985); *Francisco*, 293 F.3d at 273).

the parties,[60] and Underwriters is not an American citizen. Plaintiff contends that the first requirement is not met as there is not a signed, written agreement to arbitrate.[61]

Article II of the Convention provides, in relevant part, that "the term 'agreement in writing' shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams."[62] Here, the "agreement in writing" consists of an arbitration clause in the insurance policy, which provides that the parties must arbitrate "[a]ll matters in difference between an insured and the Insurer . . . in relation to this insurance."[63] Plaintiff argues that because it did not sign the insurance policy, the arbitration clause does not constitute an agreement in writing under the meaning of Article II.

Plaintiff's argument is foreclosed by Fifth Circuit precedent. In *Sphere Drake Insurance PLC v. Marine Towing, Inc.*, the Fifth Circuit construed Article II of the Convention to require either: (1) an arbitral clause in a contract or (2) an arbitration agreement signed by the parties or contained in an exchange of letters or telegrams.[64] The Fifth Circuit held that a signature was not required because the arbitration clause was contained in a broader insurance contract.[65] The court

---

[60] 9 U.S.C. § 202.

[61] Rec. Doc. 17 at 10–21.

[62] Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Art. II, June 10, 1958, 21 U.S.T. 2517.

[63] Rec. Doc. 1-2 at 37.

[64] *Sphere Drake*, 16 F.3d at 669.

[65] *Id.*

reasoned that the phrase "signed by the parties," modified only "an arbitration agreement" and not "an arbitral clause in a contract."[66]

 The Court recognizes that the Fifth Circuit's holding on this point is the minority view among circuits.[67] The Fifth Circuit recently acknowledged that *Sphere Drake* remains the law of this Circuit.[68] The court noted that, although other circuits have rejected *Sphere Drake's* approach, "Fifth Circuit caselaw holds that Article II does not require a signature when the arbitration clause is part of a broader contract."[69] There has been no intervening change in law that would authorize this Court to find otherwise.[70] *Sphere Drake* remains the law of this Circuit and is binding on this Court. Therefore, the arbitration clause in the insurance contract between Plaintiff and Defendants meets the requirements of Article II even though it was not signed.

 Alternatively, Defendants argue that the first requirement is satisfied because the arbitration agreement was contained in an exchange of letters, specifically a policy quote signed by Plaintiff's representative.[71] Plaintiff argues that the exchange of letters was insufficient because

---

[66] *Id. See also Neptune Shipmanagement Servs. PTE, Ltd. v. Dahiya*, 15 F.4th 630, 638 (5th Cir. 2021) ("Fifth Circuit caselaw holds that Article II does not require a signature when the arbitration clause is part of a broader contract." (citing *Sphere Drake*, 16 F.3d at 669)).

[67] *Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 186 F.3d 210, 218 (2d Cir. 1999), *abrogation on other grounds recognized by Marks on Behalf of SM v. Hochhauser*, 876 F.3d 416, 420 (2d Cir. 2017); *Yang v. Majestic Blue Fisheries, LLC*, 876 F.3d 996, 1001 (9th Cir. 2017) (calling *Sphere Drake* an "outlier decision" and questioning whether the Fifth Circuit would reach the same conclusion today), *abrogated on other grounds by GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432 (2020); *Czarina, LLC v. W.F. Poe Syndicate*, 358 F.3d 1286, 1290–91 (11th Cir. 2004) (following *Kahn Lucas* in holding that Article II requires a signed agreement); *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 449 (3d Cir. 2003) (adopting *Kahn Lucas*).

[68] *See Neptune Shipmanagement*, 15 F.4th at 638, 638 n.5 (recognizing that the Fifth Circuit's "view may now be in the minority" and collecting out-of-circuit cases rejecting the *Sphere Drake* approach).

[69] *Id.* at 638.

[70] *See Siddiqui Enterprises, LLC v. Indep. Specialty Ins. Co.*, No. 23-4329, 2024 WL 209037, at *2 (E.D. La. Jan. 19, 2024) (citing *Ashi Houma Hotels, LLC v. Independent Specialty Insurance Company*, No. 22-5289, 2023 WL 2263822, at *3 (E.D. La. Feb. 28, 2023) (rejecting the same argument).

[71] Rec. Doc. 23 at 5–6.

the policy quote did not specifically mention the arbitration clause.[72] The policy quote lists the policy form that contains the arbitration clause.[73] Plaintiff accepted the terms of the formal quote as evidenced by Plaintiff's representative's signature on the quote.[74] After binding coverage, the Defendants provided Plaintiff with a copy of the policy, which reproduced the arbitration provision in its entirety.[75] Courts have held that incorporating the contract containing the arbitration clause by reference is sufficient to satisfy the requirement that the arbitration agreement was contained in an exchange of letters.[76] The arbitration provision was "contained in an exchange of letters or telegrams" between the Defendants and Plaintiff, and the "agreement in writing" requirement is thus satisfied. Accordingly, the Court finds that all four requirements are satisfied, and the agreement is enforceable under the Convention.

**B.      *Whether the Arbitration Clause is Against Public Policy***

Having found above that the parties entered into an enforceable arbitration agreement, the Court now turns to Plaintiff's argument that the arbitration provision is against public policy under the "prospective-waiver" doctrine.[77] Plaintiff asserts that it has the right to pursue a claim for penalties, attorneys fees, extra contractual and consequential damages for the unreasonable,

---

[72] Rec. Doc. 27 at 4–6.

[73] Rec. Doc. 23-1 at 2 (referencing the SMB 300 2106 CW ALL Commercial Property Form).

[74] *Id.* at 8.

[75] Rec. Doc. 1-2 at 1.

[76] *See Standard Bent Glass*, 333 F.3d at 449–50 ("As noted, the contract here was contained in the February 2 exchange of letters. Though the arbitration clause may not have been included in that exchange, it was incorporated by reference in the letters. This is all [the Convention] requires."). *Ashi Houma Hotels, LLC v. Indep. Specialty Ins. Co.*, No. 22-5289, 2023 WL 2263822, at *4 (E.D. La. Feb. 28, 2023) ("[T]he exchange of communications between the Defendant Insurers and Ashi Houma not only contained references to the policy form that contained the arbitration provision, but also included the full arbitration provision itself.").

[77] Rec. Doc. 17 at 21.

arbitrary and capricious actions of Defendants, and the arbitration clause strips Plaintiff of that right by indicating the panel may not decide those damages.[78]

"The 'effective-vindication' or 'prospective-waiver' doctrine stems from *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*"[79] In *Mitsubishi Motors*, the Supreme Court noted that "in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy."[80] The Supreme Court added that "so long as the prospective litigant effectively may vindicate its statutory cause of action in the forum, the statute will continue to serve both its remedial and deterrent function."[81] "Because the case at issue in *Mitsubishi Motors* had not yet been arbitrated, the Court concluded that the district court would have the opportunity at the 'award-enforcement stage to ensure that the legitimate interest in the enforcement of the antitrust laws has been addressed.'"[82]

Courts have limited the prospective waiver doctrine to waivers of federal statutory rights.[83] Plaintiff has not identified any federal statutory right that was waived. Additionally, the issue of

---

[78] *Id.* at 25.

[79] *Llagas v. Sealift Holdings, Inc.*, No. 23-30047, 2023 WL 8613607, at *6 (5th Cir. Dec. 13, 2023) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985)).

[80] *Id.* (quoting *Mitsubishi Motors*, 473 U.S. at 637 n.19).

[81] *Id.* (quoting *Mitsubishi Motors*, 473 U.S. at 637).

[82] *Id.* (quoting *Mitsubishi Motors*, 473 U.S. at 638).

[83] *Gibbs v. Haynes Invs., LLC*, 967 F.3d 332, 340–41 (4th Cir. 2020) ("And that is exactly the result we reached in both *Hayes* and *Dillon*, where we concluded that the choice-of-law provisions providing for the application of tribal law to the exclusion of federal statutory law amounted to an 'unambiguous and categorical waiver of federal statutory rights,' thereby rendering the arbitration agreements unenforceable.").

whether the arbitration clause violates the prospective waiver doctrine is premature as this issue should be addressed at the award enforcement stage rather than the arbitration enforcement stage.[84]

Additionally, Plaintiff has not shown that the bad faith penalties were waived. The Policy states that the arbitration tribunal "may not award exemplary, punitive, multiple or other damages of a similar nature."[85] Notably, the Policy does not state that consequential damages are excluded, and courts frequently categorize damages under Louisiana Revised Statute § 22:1892 and § 22:1973 as consequential damages.[86] The Fifth Circuit has held that "whenever the scope of an arbitration clause is in question, the court should construe the clause in favor of arbitration."[87] Typically, courts have rejected the argument that bad faith claims fall outside the scope of the arbitration agreement where the clause contains language that all claims and disputes related to the contract are subject to arbitration.[88]

The arbitration clause provides that "all matters in difference" between Plaintiff and Defendants are subject to arbitration. This Court finds that these claims derive directly from the

---

[84] *Johnson v. NCL (Bahamas) Ltd.*, 163 F.Supp.3d 338, 361 (E.D. La. 2016); *Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft MBHG & CIE, KG*, 783 F.3d 1010, 1021 (5th Cir. 2015); *Llagas v. Sealift Holdings, Inc.*, No. 23-30047, 2023 WL 8613607, at *6 (5th Cir., Dec. 13, 2023).

[85] Rec. Doc. 1-2 at 38.

[86] *Certain Underwriters at Lloyd's, London v. Belmont Commons L.L.C.*, No. 22-3874, 2023 WL 105337, at *3 (E.D. La. Jan. 4, 2023), *aff'd sub nom. Indian Harbor Ins. Co. v. Belmont Commons, L.L.C.*, No. 23-30246, 2024 WL 962376 (5th Cir. Mar. 6, 2024); *Richardson v. Scottsdale Ins. Co.*, No. 21- 673, 2022 WL 352147, at *1 (W.D. La. Feb. 4, 2022) *Burke v. Lafayette Ins. Co.*, 2011-0755 (La. App. 4 Cir. 4/18/12), writ denied, 2012-1104 (La. 9/12/12), 98 So. 3d 312 ("We find that the record supports that Ms. Burke suffered mentally at the hands of Lafayette and her anguish was proven at trial and therefore punishable under the theory of consequential damages.").

[87] *Sedco, Inc.*, 767 F.2d at 1145.

[88] *See, e.g., City of Kenner v. Certain Underwriters at Lloyd's London*, No. 2022 WL 16961130 at *3 (E.D. La. Nov. 16, 2022) (Vance, J.) (granting Defendants' motion to compel arbitration and ordering parties to arbitrate their breach of duty of good faith and fair dealing claim alongside the breach of contract claim); *STMB Props., LLC v. Certain Underwriters at Lloyd's London*, No. 22-2229, 2022 WL 3924313 at *2–3 (E.D. La. Aug. 31, 2022) (Africk, J.) (holding same); *Georgetown Home Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's London*, No. 20-102, 2021 WL 359735 at *15 (M.D. La. Feb. 2, 2021) (deGravelles, J.) (holding same).

Policy and therefore are subject to the arbitration clause. Therefore, Plaintiff's Louisiana law claims are governed by the arbitration provision because the delegation clause governs "all matters in difference" arising from the Policy.[89]

## C.   *Whether This Action Should be Dismissed Pending Arbitration*

Defendants ask the Court to stay or, in the alternative, dismiss this action pending arbitration.[90] Thus, having determined that Plaintiff's claims must be submitted to arbitration, the Court must next determine whether to dismiss or stay this action pending arbitration.

Section 3 of the FAA provides that, when claims are properly referable to arbitration, the court shall stay the trial of the action until the arbitration is complete upon application of one of the parties.[91] Thus, "because the Convention Act incorporates the FAA, 'parties whose agreements fall under the Convention have had to seek authority for stays under [Section 3].'"[92] Accordingly, a court may not deny a stay when a valid arbitration agreement falls under the Convention. The Supreme Court recently clarified that when a dispute is subject to arbitration under the FAA, and a party has requested a stay of the court proceeding pending arbitration, the Court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration.[93] Instead, the FAA compels the Court to stay the proceeding.[94] Therefore, the Court stays this litigation pending arbitration rather than dismiss Plaintiff's claims.

---

[89] *See Georgetown Home Owners Ass'n, Inc.* 2021 WL 359735 at *15.

[90] Rec. Doc. 9 at 2.

[91] 9 U.S.C. § 3.

[92] *1010 Common, LLC*, No. 20-2326, 2020 WL 7342752, at *12 (E.D. La. Dec. 9, 2020) (quoting *Todd v. Steamship Mut. Underwriting Ass'n, Ltd.*, No. 08-1195, 2011 WL 1226464, at *2 (E.D. La. Mar. 28, 2011)).

[93] *Smith v. Spizzirri*, No. 22-1218, 2024 WL 2193872, at *3 (U.S. May 16, 2024).

[94] *Id.*

## V. Conclusion

Based on the foregoing,

**IT IS HEREBY ORDERED** that Defendants' "Motion to Compel Arbitration and to Stay, or Alternatively, Dismiss these Proceedings"[95] is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** to the extent Defendants move the Court to compel arbitration and stay this litigation. The Motion is **DENIED** to the extent Defendants move this Court to dismiss Plaintiff's claims against them.

**IT IS FURTHER ORDERED** that the above-captioned matter is **STAYED AND ADMINISTRATIVELY CLOSED** pending arbitration.

**NEW ORLEANS, LOUISIANA**, this __12th__ day of June, 2024.

**NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

[95] Rec. Doc. 9.